CRAIG FRANCIS SZEMPLE, :

Plaintiff, : Civ. No. 19-12746 (PGS) (DEA)

:

v. :

:

RUTGERS UNIVERSIRTY, et al., : **OPINION**

:

Defendants. :

:

**PETER G. SHERIDAN, U.S.D.J.**

## I. INTRODUCTION

Plaintiff Craig Francis Szemple ("Plaintiff" or "Szemple") is a state prisoner who is currently incarcerated at the Northern State Prison ("NSP") in Newark, New Jersey. He is proceeding *pro se* with a civil rights complaint brought pursuant to federal and state law.

This Court must screen the allegations of the complaint pursuant to 28 U.S.C. § 1915A to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the allegations seek monetary relief from a defendant who is immune from suit. For the following reasons, the complaint will be permitted to proceed in part.

## II. FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND

The factual allegations of the complaint will be construed as true for purposes of this screening opinion. Szemple names the following as defendants in this action: (1) Rutgers University; (2) UCHC; (3) New Jersey Department of Corrections ("NJ DOC"); (4) NJ DOC Commissioner Gary Lanigan; (5) George Robinson, Administrator Northern State Prison; (6) Dr. Hershem Soliman; (7) Dr. Art Brewer – Assistant Director in charge of health services with the NJ DOC; (8) William Briglia – Supervisor of health services with the NJ DOC ; (9) Sharmalie

Perera; (10) Sandra Connolly; (11) Michelle Borowski; (12) Rajiv Shah; (13) Latifa Fedei[1]; (14) Rhoda Kueto – staff member at NSP; (15) Maureen Komaraski – staff member at NSP; (16) SCO Gonzalez – staff member at NSP; (17) Morton; (18) NJ DOC Central Transport Unit ("NJ DOC CTU"); (19) Pat Nogan; (20) Beverly Hastings; (21) Michele Ricci; (22) John Cunningham; (23) Willie Bonds; (24) Register SCO Saunders; (25) SCO Ramos; (26) SCO Culibette; (27) Geetha Hrishikesan – staff member at NSP; (28) Saint Francis Hospital; (29) NSP; and (30) John and Jane Doe(s) 1-10.

Szemple's allegations relate to two main issues that have arisen with his incarceration, namely: (1) the transport he has received while attending medical appointments outside of prison; and (2) the medical care (or lack thereof) he has received while incarcerated.

Szemple states that there was a change in the type of prison transport vans used by the NJ DOC CTU for inmates in 2014-15. (*See* ECF 1 at 6). He states that he was injured on two different trips from Saint Francis Hospital during this time. (*See id.* at 5). Szemple states that prisoners were seated on steel seats that did not fit a person's torso while handcuffed and leg shackled. (*See id.* at 6). The inmate looked inside the van rather than being seated in a forward-looking direction. (*See id.*) He explains that the prison vans were driven in excess of ninety miles-per-hour while on the highway as they swerved in and out of traffic. (*See id.* at 6). Szemple claims this caused Szemple to become airborne and bounce around which caused him injuries. (*See id.* at 6-7).

Szemple alleges he suffers from severe coronary artery disease and that his medical problems are well known to the defendants. (*See id.* at 7). He claims that doctors from the NJ

---

[1] The complaint's caption spells this defendant's last name as Fedei. (*See* ECF 1 at 1). However, throughout the body of the complaint, this defendant is routinely spelled Fedai. For purposes of consistency, this Court will use the spelling of this defendant's name as listed in the caption.

DOC administration planned for him to be transported in the back of an ambulance, or at least in a van that was wheelchair accessible. (*See id.* at 7-8). Indeed, he states that he was placed on an "exception list," which Szemple alleges "is an order placing plaintiffs name on the list for transport by wheelchair accessible vans or ambulances on all trips outside the facility where the prisoner is housed." (*See id.* at 8). At one point, Dr. Smychek (not named as a defendant), asked Szemple why he agreed to travel in the prison vans. Smycheck noted the dangers to Szemple when he traveled in these vans. (*See id.*). However, Dr. Connolly was adamant that inmates would travel in prison vans regardless of their medical conditions. (*See id.* at 8-9).

Between February 18, 2016 and April 18, 2016, Szemple had six medical trips where he traveled in prison vans. (*See id.* at 10). Szemple states that he:

> suffers from prominent degenerative changes and is in constant debilitating pain. Recent MRI findings show that plaintiff has progressively degenerative changes, worst at C-5, C-6 with severe thecal sac narrowing, cord impingement and severe narrowing of left foramina narrowing, spondylosis and disc bulging in the lumbar section of the lower spine.

(*See id.* at 9-10). Szemple says that the severity of these injuries can be traced to his travel in the prison vans. (*See id.* at 10). During one of these trips in 2016, Dr. Tony Sifonosis explained and read the diagnostic test results to Szemple in front of two Central Transportation Unit officers that travelled with Szemple. (*See id.* at 11). Specifically, Dr. Sifonosis explained that "'any jarring of the patients (Szemple) spine, specifically the cervical section C-3, C-4, C-5, characterized further 'the slightest slip and fall, or any accident would result in plaintiffs *instantaneous paralysis, or instant death to Mr. Szemple*." (*Id.* at 10-11 (emphasis in original)). At that time, Dr. Sifonosis ordered in front of the officers that Szemple be given an appointment with Dr. Goldstein for immediate spinal surgery. (*See id.* at 12). Despite this, Szemple was placed back in the prison van and nothing was done when he returned to prison. (*See id.*)

Next, Szemple recounts an incident that occurred in April, 2016 as follows:

> In April of 2016, Plaintiff was taken to [Saint Francis Hospital] for right inguinal hernia surgery. Immediately after the Plaintiff was taken from the operating room, he was awakened by the recovery room nurse, declared ready to be taken back to the prison ward of [Saint Francis Hospital]. In less than 25 minutes from the operating room, where the plaintiff underwent surgery, and was literally rushed out of his hospital gown, into his khakis and placed into a wheelchair and wheeled to the loading dock for transport back to the prison. As the plaintiff was leaving his room, the plaintiff told the officer that his I.V. was still in his arm. This was overlooked in the rush to get the plaintiff out of the hospital. The nurse who took out the i.v. didn't wait until the bleeding from the site stopped, and what followed was a steady stream of blood which formed a puddle of blood at his feet. The officer didn't notice this, and the Plaintiff told the officer, who seemed annoyed that this would take a few minutes to fix and told the nurse, who now applied the pressure on the wound to stop the bleeding and threw the hospital beds blanket over the puddle of blood so to cover it up. The plaintiff made his way to the [prison van] where he was placed in the back again, crammed into one side with 5 other inmates from [Saint Francis Hospital]. 5 inmates was already over the limit by one inmate, (the limit was 4 inmates on each side} and with me now there was no space. I ended up riding on the floor, propped up by placing my arm on the seat and the other cuffed hand trying its best to support, to avoid further injury during the trip. [A]t one end of the section, an inmate had gotten sick from being bounced off the walls of the van, as it swerved in and out of traffic on the NJ turnpike, and [h]e proceeded to vomit. which made the other cramped inmates visibly sick and nauseous. At my end, which was the space immediately inside the rear door of the van. the blood that was suppose to have been stopped from the i.v. site dripped slowly down my arm unto the floor and made a stream headed up towards the front of the van. Blood and vomit, no ventilation; bouncing back and forth, off the walls . . . . This ride proved to be catastrophic for Szemple, and ended up in recurrent surgery to be performed on the plaintiff less than six months later, for which the plaintiff has yet to recovery from.

(ECF 1 at 13-15).

Next, Szemple recounts an injury he suffered from an October 15, 2018 trip. (*See id.* at 16). While traveling in a prison van to a medical appointment, Szemple states that he was

bounced around and ended up on the floor of the van. (*See id.* at 18). He states that as a result of this trip, he ended up with an umbilical hernia and bilateral hydroceles. (*See id.* at 18). Upon returning to NSP, he had bruises all over his body. (*See id.*) A Jane Doe nurse at NSP noted the bruises on Szemple and he was then released to his housing unit. (*See id.* at 18-19). However, Szemple alleges another John Doe nurse changed the report in its entirety to indicate as if nothing had happened to Szemple. (*See id.* at 18-19).

The next day, Connolly had Fedei examine Szemple. (*See id.* at 19). Szemple alleges that Fedei covered up Szemple's injuries and that he was not cared for when he returned to NSP. (*See id.* at 20). Fedei's inaction was despite every UCHC doctor and attending medical assistants who had examined Szemple admitting to Szemple that surgery was needed on his abdomen. (*See id.* at 19). During Fedei's examination, Fedei also purportedly made some disparaging remarks against Jews (Szemple is Jewish). (*See id.* at 17). Szemple alleges that the denial of his medical care is due at least in part to try and bolster the profit of Rutgers/UCHC. (*Se id.* at 20). When Szemple confronted Connolly and Perera with this situation, they told him that "Pain is good for you, deal with it." (*See id.* at 17).

Szemple filed his complaint in this Court in May, 2019. (*See* ECF 1). Ultimately, Szemple's application to proceed *in forma pauperis* was denied because Szemple had received substantial income in the form of a settlement within the time covered by the *in forma pauperis* application. (*See* ECF 7 & 8). Subsequently, Szemple paid the $400 filing fee and this matter was reopened.

Szemple brings numerous causes of action in his complaint such as:

1. Breach of contract against Rutgers/UCHC

2. Medical malpractice

3. Negligence

4. Deliberate indifference

5. Punitive damages

6. Breach of N.J. Stat. Ann. § 30:4-91.1, *et seq.*

7. Breach of N.J. Admin Code § 10A:16

8. Defendants responsible for development, implementation, supervisor of polices, procedures, investigations and evaluations which caused Szemple's injuries

9. Defendants did negligently develop implement and supervise policies, procedures, investigations and evaluations that caused Szemple to suffer great pain and mental anguish

10. The policy, practice and custom of several defendants authorized certain individuals to negligently perform their duties causing Szemple to be denied his constitutional right to be free from cruel and unusual punishment

11. Several defendants violated 42 U.S.C. § 1986.

12. Intentional infliction of emotional distress

13. State constitutional claims

14. Federal constitutional tort

15. State constitutional tort

16. Fraud

17. Conspiracy under 42 U.S.C. § 1985

(*See* ECF 1 at 22-44).

## III.    LEGAL STANDARDS

District courts must review complaints in civil actions in which a prisoner seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. District courts are directed to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to

support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV.    DISCUSSION

A. Lack of Factual Allegations Against Numerous Defendants

Szemple names multiple defendants in his complaint. However, he fails to either name them in the body of his complaint with any factual allegations and/or names them in conclusory fashion in his causes for relief. Those defendants are the following:

1. Pat Nogan

2. Beverly Hastings

3. Michele Ricci

4. Michelle Borowski

5. John Cunningham

6. Willie Bonds

7. Hersham Solimon

8. SCO Saunders

9. SCO Gonzalez

10. SCO Ramos

11. SCO Culibette

12. SCO Morton

13. Geetha Hrishikesan

14. Rhoad Keuto

15. Maureen Kormoask

16. Rajiv Shah

As Szemple fails to state any claims against these defendants with any facial plausibility, the claims against them will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

B. NJ DOC, NJ DOC-CTU, NSP

Szemple next brings claims against the NJ DOC, NJ DOC-CTU and the NSP. At the outset, this Court notes that it is entirely appropriate at the screening stage for this Court to examine whether these three defendants are immune from suit under the Eleventh Amendment. *Accord Alfred v. New Jersey,* No. 13–0332, 2013 WL 4675536, at *9–10 (D.N.J. Aug. 29, 2013) (dismissing claims against State of New Jersey at screening stage based on Eleventh Amendment immunity); *Jones v. Cent. Reception & Assignment Facility,* No. 12–0041, 2013 WL 4588775, at

*3 (D.N.J. Aug.27, 2013) (dismissing New Jersey Department of Corrections as a state entity or agency of the State of New Jersey at screening stage based on Eleventh Amendment immunity). The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Accordingly, "[t]he rule has evolved that a suit by private parties seeking to impose liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Section 1983 does not override a state's Eleventh Amendment immunity. *See Gromek v. Maenza*, 614 F. App'x 42, 44 (3d Cir. 2015) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

NJ DOC, NJ DOC-CTU and NSP, as departments or agencies of State government, are immune from this suit for money damages in federal court pursuant to the Eleventh Amendment. *See Durham v. Dep't of Corr.*, 173 F. App'x 154, 156 (3d Cir. 2006) (state department of corrections is immune from suit pursuant to the Eleventh Amendment) (citing *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)); *see also Foye v. Wexford Health Sources, Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (state prison and state department of corrections entitled to Eleventh Amendment immunity and are not "person' subject to suit under Section 1983); *Whitaker v. New Jersey State Prison*, No. 15-6744, 2016 WL 781897, at *2 n.2 (D.N.J. Feb. 29, 2016) (State of New Jersey and New Jersey Department of Corrections immune from suit for money damages under Section 1983); *Williams v. Gartrell*, No. 15-5609, 2015 WL 5110913, at *2 n.2 (D.N.J. Aug. 31, 2015) (same).

Additionally, it is worth noting that this same immunity applies against these three defendants on Szemple's state law claims as "a state retains sovereign immunity for all state law

claims unless the state consents to suit." *Allen v. New Jersey, Pub. Def.*, No. 16-8661, 2017 WL 3086371, at *8 (D.N.J. July 20, 2017) (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-41 (2002)); *see also King v. Christie*, 981 F. Supp. 2d 296, 310 n.12 (D.N.J. 2013) (finding that, under the Eleventh Amendment, a plaintiff "may not bring state law claims ... against the State regardless [of] the type of relief it seek[s]," and that "supplemental jurisdiction does not authorize district courts to exercise jurisdiction over claims against non-consenting states"). To that end, "courts have held that the State of New Jersey has not articulated a clear waiver of sovereign immunity in regard to state common law claims." *Allen*, 2017 WL 3086371, at *8 (citation omitted).

Accordingly, Szemple's remaining claims against NJ DOC, NJ DOC-CTU and the NSP will be dismissed without prejudice because these defendants are immune from Szemple's claims for monetary damages.

C. <u>Breach of Contract</u>

Szemple first brings a breach of contract claim against Rutgers/UCHC. (*See* ECF 1 at 22-23). He claims that Rutgers/UCHC breached its contract with the NJ DOC by refusing to provide medical treatment to him. (*See id.* at 22). He asserts his breach of contract claim as an intended third-party beneficiary. (*See id.*).

Szemple tried to bring a similar claim against Rutgers/UCHC in another case filed in this Court in *Szemple v. Rutgers*, No. 10-5445, 2016 WL 1228842 (D.N.J. Mar. 29, 2016). This Court noted in that case that Szemple had failed to reveal any contractual language suggesting that he was an intended third-party beneficiary. *See id.* at *8. Indeed, this Court, relying on other cases stated as follows:

> Plaintiff has no standing to sue for such violation:
> this is so even if Plaintiff deems or designates

himself as a third-party beneficiary of this contract. *See Brown v. Sadowski,* 2009 U.S. Dist. LEXIS 62718, at *13, 2009 WL 2182604 (D.N.J. July 20, 2009) ("Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to the state, since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the state might have with the prison officials") (relying on *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 126 S. Ct. 1991, 164 L.Ed.2d 720 (2006)); *accord Glenn v. Hayman,* 2007 U.S. Dist. LEXIS 20092, at *34, 2007 WL 894213 (D.N.J. Mar.20, 2007) (analogously relying on *Anza* for the observation that, "[s]ince the State of New Jersey was the allegedly defrauded party (and in no way designated Plaintiffs to litigate the alleged RICO claim on behalf of the State), Plaintiffs cannot bring this claim").

*Maqbool v. Univ. Hosp. of Med. & Dentistry of N.J.,* 2012 WL 2374689, at *4 (D.N.J. June 13, 2012) (quoting *Parker v. Gateway Nu–Way Found.,* 2010 U.S. Dist. LEXIS 115116, at *14–15, 2010 WL 4366144 (D.N.J. Oct. 26, 2010)). *See also Green v. Corzine,* 2011 WL 735745, at *4 (D.N.J. Feb. 22, 2011); *Edwards v. Corr. Med. Serv.,* 2010 WL 920020, at *4 (D.N.J. Mar. 9, 2010).

*Szemple,* 2016 WL 1228842, at *8. For similar reasons as discussed in Szemple's prior case cited above, he fails to state a breach of contract claim against Rutgers/UCHC in this case. *Accord Baker v. Camarillo,* No. 17-12095, 2018 WL 1203473, at *5 (D.N.J. Mar. 8, 2018) (citing *Ali v. Univ. Corr. Health Care,* No. 17–1285, 2017 WL 3736652, at *3 (D.N.J. Aug. 30, 2017); *Garcia v. Corr. Med. Serv.,* No. 13–1250, 2014 WL 346625, at *6 (D.N.J. Jan. 30, 2014); *Maqbool v. University Hosp. of Medicine & Dentistry of N.J.,* No. 11–4592, 2012 WL 2374689, at *4 (D.N.J. June 13, 2012); *Green v. Corzine,* No. 09–1600, 2011 WL 735745, at *4 (D.N.J. Feb. 22, 2011)) (dismissing breach of contract claim and agreeing with other courts within this district which "have held that prisoner have no standing to sue for any alleged breach of contract between the State and its medical providers; the only party with standing to sue for a breach of

contract would be the State itself"). Accordingly, Szemple's breach of contract claim is dismissed without prejudice.

D. Fraud

Szemple next brings a fraud claim. (*See* ECF 1 at 40-41). He asserts that defendants intentionally misrepresented material facts to him "as to his dental condition." (*See* ECF 1 at 40).

> To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350, 367–68 (1997)).

Szemple's allegations in his complaint fail to satisfy the *Iqbal/Twombley* standard to state a fraud claim with facial plausibility. The complaint is completely silent with respect to any factual allegations regarding Szemple's dental condition. Accordingly, the fraud claim will be dismissed without prejudice for failure to state a claim.

E. N.J. Stat. Ann. § 30:4-91.1 *et seq.* & N.J. Admin. Code § 10A:16

Szemple next seeks injunctive relief in his complaint citing to N.J. Stat. Ann. § 30:4-91.1 *et seq.* More specifically, he requests a "judicial furlough" to allow him to get necessary medical treatment and other medical procedures. N.J. Stat. Ann. § 30:4-91.1 states as follows:

> When a person has been convicted of an offense against the State of New Jersey and has been committed for a term of imprisonment by a court to an institution defined in R.S. 30:1-7, and when it appears to the satisfaction of the Commissioner of Institutions and Agencies that the inmate should be transferred to an institution or facility more appropriate for his needs and welfare or that of other inmates or for the security of the institution, the commissioner shall be authorized and empowered to designate the place of confinement to which the inmate shall be transferred to serve his sentence.

N.J. Stat. Ann. § 30:4-91.1. This statute "relates to 'the power to transfer inmates from one institution to another," *see Szemple*, 2016 WL 1228842, at \*9, not the power to grant a "judicial furlough" from Szemple's state conviction and incarceration. Thus, this claim will be dismissed without prejudice as the relief Szemple seeks under it is not proper.

Additionally, this Court notes that N.J. Admin. Code § 10A:16 does not create a private right of action. *See Szemple*, 2016 WL 1228842, at \*9 (citing *Maqbool*, 2012 WL 23874689, at \*4).

Accordingly, these two causes of action are dismissed with prejudice for failure to state a claim upon which relief may be granted.

F. Punitive Damages

Szemple also brings a standalone claim for punitive damages. (*See* ECF 1 at 26-27). However, "'[p]unitive damages are a remedy incidental to [a] cause of action, not a substantive cause of action in and of themselves.'" *Szemple*, 2016 WL 1228842, at \*9 (citing *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000)). Accordingly, Szemple's standalone claim for punitive damages is dismissed with prejudice.[2]

G. Federal Constitutional Tort

Szemple next attempts to bring a claim alleging a "Federal Constitutional Tort." (*See* ECF 1 at 38-39). It is not altogether clear the basis of Szemple's cause of action for a "Federal Constitutional Tort."[3] However, to the extent that Szemple is attempting to bring a claim under

---

[2] This dismissal only applies to the standalone separate cause of action, not to any possible request for punitive damages that Szemple may be requesting in his claims that will proceed past screening.

[3] It appears as if a page is missing from the complaint that is available on CM/ECF. Szemple's complaint within his "Federal Constitutional Tort" cause of action goes from paragraph 87 on page 38 to paragraph 92 on page 39 of the complaint. It is not clear whether the complaint Szemple submitted to the Clerk's Office omitted this page, or, whether, when the complaint was scanned by the Clerk's office, whether a page was inadvertently not scanned (a hard copy of the

the Federal Tort Claims Act, his complaint fails to state a claim. Indeed, the only proper defendant to a claim under the Federal Tort Claims Act is the United States of America. *See Priovolos v. F.B.I.*, 632 F. App'x 58, 60 (3d Cir. 2015) (citing *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008)). As Szemple has not named the United States as a defendant, to the extent his "Federal Constitutional Tort" claim is attempting to bring a claim under the Federal Tort Claims Act, it must be dismissed without prejudice.

H. Statute of Limitations

Many of Szemple's factual allegations raised in the compliant occurred in 2014-2016. A District Court can raise the issue of the statute of limitations *sua sponte* at the screening stage. *See Hunterson v. Disabato*, 532 F. App'x 110, 111-12 (3d Cir. 2007) ("[A] district court may *sua sponte* dismiss a claim as time-barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable statute of limitations has run."). For the following reasons, many of the allegations giving rise to Szemple's claims are barred by the applicable statute of limitations.

Except for Szemple's state law fraud and breach of contract claims (both of which have already been dismissed for the reasons discussed above) which carry a six-year statute of limitations, *see Stravinsky v. Wells Fargo Bank, N.A.*, No. 17-5112, 2019 WL 2098845, at *4 (D.N.J. May 14, 2019) (noting that fraud and breach of contract claims in New Jersey have a six-year statute of limitations), the majority of Szemple's remaining claims have a two-year statute of limitations. *See McKinnie v. Hudson Cty. Prosecutor Office*, 13-7290, 2016 WL 1162382, at *6 (D.N.J. Mar. 24, 2016) ("Whether these [claims] are viewed as constitutional claims under 42 U.S.C. § 1983 or as state tort claims, the statute of limitations is the same: two years. Section

---

complaint was no longer maintained by the Clerk's Office as of the date of this opinion). This Court will only review and screen what is currently on the CM/ECF docket.

1983 claims are subject to New Jersey's two-year personal injury tort statute of limitations."

(citing N.J. Stat. Ann. § 2A:14-2(a); *Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013)

(citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010))); *see also Agcaoili v.*

*Thayer*, No. 08-2715, 2009 WL 10698039, at *4 n.16 (D.N.J. Apr. 30, 2009) (noting claims for

conspiracy under "42 U.S.C. § 1985 are subject to New Jersey's two-year statute of limitations

for personal injury actions") (citing N.J. Stat. Ann. § 2A:14-2(a); *Liberty Hill Realty, Inc. v. Illva*

*Saronno Corp.*, No. 06-4842, 2007 WL 2080011, at *2 (D.N.J. July 17, 2007)). Section 1986

contains an explicit statute of limitations of one year, *see* 42 U.S.C. § 1986, shorter than the

borrowed two-year period that governs Section 1983 and 1985 claims.

> Federal law governs a cause of action's accrual date. *Genty v.*
> *Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir.1991). Under
> federal law, a cause of action accrues, and the statute of
> limitations begins to run, "when the plaintiff knew or should have known of
> the injury upon which its action is based." *Sameric Corp. v. City of*
> *Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998) (citation omitted);
> *see also Montgomery v. De Simone,* 159 F.3d 120, 126 (3d
> Cir.1998). The determination of the time at which a claim accrues
> is an objective inquiry; we ask not what the plaintiff actually knew
> but what a reasonable person should have known. *Barren v. United*
> *States,* 839 F.2d 987, 990 (3d Cir.1988). As a general matter, a
> cause of action accrues at the time of the last event necessary to
> complete the tort, usually at the time the plaintiff suffers an injury.
> *See United States v. Kubrick,* 444 U.S. 111, 120, 100 S. Ct. 352, 62
> L.Ed.2d 259 (1979). "The cause of action accrues even though the
> full extent of the injury is not then known or predictable. Were it
> otherwise, the statute would begin to run only after a plaintiff
> became satisfied that he had been harmed enough, placing the
> supposed statute of repose in the sole hands of the party seeking
> relief." *Wallace* [*v. Kato*]*,* 549 U.S. [384] at 391, 127 S. Ct. 1091
> [(2007)] (internal quotation marks and citations omitted).

*Kach v. Hose,* 589 F.3d 626, 634–35 (3d Cir. 2009).

Szemple filed his complaint in May, 2019. His complaint brings claims, at least in part,

related to injuries he suffered in 2014-2016 while being transported to medical appointments.

Presumably, Szemple would have been aware of these injuries at the time they occurred.

Accordingly, aside from his breach of contract and fraud claims which have already been dismissed for the reasons discussed *supra*, Szemple's claims related to allegations occurring before May, 2017 are also barred by the applicable statute of limitations.

With respect to whether the statute of limitations should be tolled, "'[s]tate law, unless inconsistent with federal law, also governs the concomitant issue of whether a limitations period should be tolled.'" *McPherson v. United States*, 392 F. App'x 938, 944 (3d Cir.2010) (quoting *Dique*, 603 F.3d at 185). New Jersey sets forth certain bases for "statutory tolling." *See, e.g.,* N.J. Stat. Ann. § 2A:14–21 (detailing tolling because of minority or insanity); N.J. Stat. Ann. § 2A:14–22 (detailing tolling because of non-residency of persons liable). Nevertheless, the complaint does not allege any basis for statutory tolling for the events transpiring prior to May, 2017.

Additionally, New Jersey "permits equitable tolling where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." *Cason v. Arie Street Police Dep't,* No. 10–0497, 2010 WL 2674399, at *5 n. 4 (D.N.J. June 29, 2010) (citing *Freeman v. State,* 347 N.J. Super. 11, 31, 788 A.2d 867 (N.J. Sup. Ct. App. Div. 2002)). The complaint is silent as to any reason to equitably toll Szemple's claims arising from events transpiring prior to May, 2017. Accordingly, Szemple's claims arising from allegations prior to May, 2017 are dismissed without prejudice as barred by the statute of limitations.[4]

---

[4] As Szemple's inadequate medical care allegations as they relate to his purported improper treatment while at the Saint Francis Hospital occurred during the time frame that is barred by the applicable statute of limitations, Szemple's claims against the Saint Francis Hospital will also be dismissed without prejudice.

I.    <u>Deliberate Indifference to Serious Medical Needs & Remaining State Law Claims Against Connolly, Fedei, John Doe Nurse arising out of October 15, 2018 Incident</u>

Szemple alleges that he was injured during transport on October 15, 2018. (*See* ECF 1 at 18). Upon returning to the prison, Szemple states he now had an umbilical hernia and a bilateral hyroceles that required surgery. (*See id.*). Furthermore, he had bruises and black and blue marks all over his body upon his return to prison. (*See id.*) One nurse examined him and released him to go back to his housing unit. (*See id.* at 18-19). However, a John Doe nurse purportedly changed the female nurse's report to make it seem like nothing had happened. (*See id.* at 19). The next day, Connolly and Fedei were involved in examining Szemple. Szemple alleges that they did not care for him despite what his records indicated regarding his new injuries and need for surgery. (*See id.* at 20).

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse,* 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent,* 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor,* 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987))).

Upon review, this Court will permit Szemple's deliberate indifference and remaining corresponding state law claims against the John Doe nurse, Fedei and Connolly arising out of the October 15, 2018 incident/injuries as it relates to his subsequent medical care (or lack thereof) to proceed past screening.

J. Section 1985 & 1986 Claims Against Fedei, Connolly and Perera

Szemple next asserts a claim pursuant to 42 U.S.C. § 1985. The relevant section of that statue states as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if

one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985(3). Accordingly, the elements to state a claim under § 1985(3) are:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S.

825, 828-29 (1983). As one court in this District has explained:

In a line of cases beginning with *Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971), the Supreme Court clarified that § 1985(3) is limited to private conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Id.* at 102, 91 S. Ct. 1790; *see* [*United Bhd. of Carpenters and Joinders of Am., Local 610, AFL-CIO v.*] *Scott*, 463 U.S. [825,] at 829, 103 S. Ct. 3352 [(1983)] (finding that commercial and economic animus could not form the basis for section 1985(3) claim); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993); *see also Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (explaining that second element of § 1985(3) requires "a plaintiff to allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the class was invidious." (citation omitted)). Thus, to sustain a federal conspiracy claim under § 1985(3), plaintiffs must allege that the purported conspirators were motivated by a racial or class-based animus. *Defeo v. Sill*, 810 F. Supp. 648, 658 (E.D. Pa. 1993).

*Baldeo v. City of Paterson*, No. 18-5359, 2019 WL 277600, at *10 (D.N.J. Jan. 18, 2019).

While the it does not appear that the Third Circuit has directly addressed whether Section 1985(3) applies to religious groups, it has suggested that religious groups can be a class protected

by Section 1985(3). *See Handelman v. State of New Jersey*, No. 16-2325, 2016 WL 3691976, at

*11 (D.N.J. July 12, 2016) (quoting *Startzell v. City of Phila.*, No. 05-5287, 2006 WL 1479809,

at *4 (E.D. Pa. May, 26, 2006) (citing *Wilson v. Rackmill*, 878 F.2d 772, 775 93d Cir. 1989))).

Based on Sezmple's claims regarding the deliberate indifference to his serious medical needs

arising from the October 15, 2018 injuries as well as Fedei's comments to Szemple about his

Jewish faith during his medical examination, and Szemple's corresponding allegation that

Connolly and Perera encouraged Fedei to berate Jewish inmates, this Court will permit

Szemple's Section 1985(3) claims to proceed against these three defendants. *See Herndon v.*

*Fagg*, No. 17-194, 2018 WL 8368659, at *6 (N.D. Ga. May 2, 2018) (citing *Park v. City of*

*Atlanta*, 120 F.3d 1157, 1162 (11th Cir. 1997) ("To show § 1985(3) animus, Plaintiffs are

required to alleged something more, such as racially charged language or commentary associated

with the conspiracy.")

Next, Szemple brings a claim under 42 U.S.C. § 1986. (*See* ECF 1 at 33-34). That section

states as follows:

> Every person who, having knowledge that any of the wrongs
> conspired to be done, and mentioned in section 1985 of this title,
> are about to be committed, and having power to prevent or aid in
> preventing the commission of the same, neglects or refuses so to
> do, if such wrongful act be committed, shall be liable to the party
> injured, or his legal representatives, for all damages caused by such
> wrongful act, which such person by reasonable diligence could
> have prevented; and such damages may be recovered in an action
> on the case; and any number of persons guilty of such wrongful
> neglect or refusal may be joined as defendants in the action; and if
> the death of any party be caused by any such wrongful act and
> neglect, the legal representatives of the deceased shall have such
> action therefor, and may recover not exceeding $5,000 damages
> therein, for the benefit of the widow of the deceased, if there be
> one, and if there be no widow, then for the benefit of the next of
> kin of the deceased. But no action under the provisions of this
> section shall be sustained which is not commenced within one year
> after the cause of action has accrued.

42 U.S.C. § 1986. As one court has noted:

> Section 1986 provides an additional cause of action for those able
> to state a claim under § 1985. Section 1986 provides a cause of
> action against persons who are aware of a § 1985 conspiracy, but
> fail to intervene. In order to state a claim under § 1986, a plaintiff
> must allege that: "(1) the defendant had actual knowledge of a §
> 1985 conspiracy, (2) the defendant had the power to prevent or aid
> in preventing the commission of a § 1985 violation, (3) the
> defendant neglected or refused to prevent a § 1985 conspiracy, and
> (4) a wrongful act was committed." *Clark v. Clabaugh*, 20 F.3d
> 1290, 1295 (3d Cir.1994).

*Gray v. Cline*, No. 14-203, 2015 WL 5472856, at *18 (W.D. Pa. Sept. 17, 2015). Based on the

above discussion, Szemple's Section 1986 claim will also be permitted to proceed against Fedei,

Connolly and Perera.

K. <u>Supervisory Liability</u>

Szemple also attempts to bring claims against several defendants based on supervisory

liability. With respect to supervisors, the United States Court of Appeals for the Third Circuit has

> recognized that "there are two theories of supervisory liability, one
> under which supervisors can be liable if they established and
> maintained a policy, practice or custom which directly caused the
> constitutional harm, and another under which they can be liable if
> they participated in violating plaintiff's rights, directed others to
> violate them, or, as the persons in charge, had knowledge of and
> acquiesced in their subordinates' violations." *Santiago v.
> Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation
> and alteration marks omitted).

*Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *see also A.M. ex rel. J.M.K. v. Luzerne*

*Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). More specifically, as this Court

has noted:

> To establish supervisory liability, a plaintiff must show: "(1) the
> existence of a policy or practice that created an unreasonable risk
> of an Eighth Amendment violation; (2) the supervisor's awareness
> of the creation of the risk; (3) the supervisor's indifference to the
> risk; and (4) that the plaintiff's injury resulted from this policy or

practice." *Thorpe v. Little,* 804 F. Supp. 2d 174, 184 (D. Del. 2011), citing *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989). Put another way, supervisory liability "may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or if the supervisor's actions and inactions were 'the moving force' behind the harm suffered by the plaintiff." *Jackson v. Taylor,* 2006 WL 2347429, at *2 (D. Del. 2006).

A defendant could be held liable for personal involvement, but for there to be personal involvement, "[a]llegations of participation or actual knowledge and acquiescence...must be made with appropriate particularity." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988).

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See Iqbal,* 129 S. Ct. at 1948; *Monell v. New York City Dept. Of Social Servs.,* 436 U.S. 658, 691 (1978). In *Iqbal,* the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 129 S. Ct. at 1948. Thus, each government official is liable only for his or her own conduct. The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct. See *id.,* 129 S. Ct. at 1949.

*Szemple,* 2016 WL 1228842, at *5.

This Court will permit Szemple's claims against Perera and Rutgers/UCHC to proceed past screening under a supervisory liability theory arising from Szemple's medical care (or lack thereof) received arising from the October 15, 2018 incident. Indeed, Szemple states that Perera instructed Connolly to discontinue medications and medical procedures so that costs could be reduced. (*See* ECF 1 at 17). Szemple then states that, despite surgeons noting that he needed surgery to repair his umbilical hernia and bilateral hydroceles (*see id.* at 18), these injuries were not cared for when he returned to NSP. (*See id.* at 20).

Szemple may also be attempting to bring supervisory claims against other defendants, most notably, Lanigan, Bremer, Briglia and Robinson. This includes Szemple's purported claims against these four defendants as supervisors as it relates not only to Szemple's medical care he received in 2018, but also related to the prison van transport then as well. However, Szemple's complaint is devoid of allegations against these four defendants that they were aware of the creation of a risk with respect to policies or customs beyond conclusory allegations. Accordingly, to the extent that Szemple is attempting to bring supervisory liability claims against these four defendants, they will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## V. MOTION FOR APPOINTMENT OF PRO BONO COUNSEL

Szemple has also filed a second motion for the appointment of pro bono counsel. (*See* ECF 10). Previously, Magistrate Judge Arpert denied Szemple's first request for the appointment of counsel on December 10, 2019. (*See* ECF 9).

Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). To appoint pro bono counsel, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Furthermore, in determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155–56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144–45 (3d Cir. 2011) (reiterating

the *Tabron* factors). Additionally, the power to grant appointment of counsel lies solely with the discretion of this Court. *See Tabron*, 6 F.3d at 155. Appointing counsel may be made at any point during the litigation *sua sponte* or by granting a party's motion. *See id.* at 156.

As this Court noted in previously denying Szemple's request to proceed *in forma pauperis* application, it is not entirely clear that Szemple is indigent. (*See* ECF 7). Furthermore, while his affidavit that he has filed in support of his second motion for the appointment of pro bono counsel does indicate some aspects of Szemple's overall indigency, it does not include a copy of Szemple's current prison account that would provide a better picture on whether Szemple is indeed indigent. Given this uncertainty, along with the fact that several of the factors outlined above are not clear at this early stage of the proceedings, this Court finds that denying Szemple's request for the appointment of pro bono counsel is warranted at this time. This denial will be without prejudice in the event Szemple can make a clearer showing that he is in fact indigent and that he is entitled to the appointment of counsel based on the factors outlined above.

## VI.    CONCLUSION

For the foregoing reasons, the complaint will be permitted to proceed in part. Szemple's claims against defendants; (1) Pat Nogan; (2) Beverly Hastings; (3) Michelle Ricci; (4) John Cunningham; (5) Willie Bonds; (6) M.D. Hesham Soliman; (7) Register SCO Saunders; (8) SCO Gonzalez; (9) SCO Ramos; (10) SCO Culibette; (11) SCO Morton; (12) Geetha Hrishikesan; (13) Rhoda Keuto; (14) Mauren Komoraski; (15) Rajiv Shah; (16) Saint Francis Hospital; (17) NJ DOC; (18) NJ DOC-CTU; (19) NSP; (20) Gary Lanigan; (21) George Robinson; (22) William Briglia; (23) Art Brewer; and (24) the Saint Francis Hospital are dismissed without prejudice. Szemple's breach of contract claim is dismissed without prejudice. Szemple's fraud claim is dismissed without prejudice. Szemple's claims under N.J. Stat. Ann. § 30:4-91 *et seq.*

and N.J. Admin. Code § 10A:16 are dismissed with prejudice. Szemple's standalone claim for punitive damages is dismissed with prejudice. Szemple's federal constitutional tort claim presuming it is a claim attempting to be brought under the Federal Tort Claims Act is dismissed without prejudice. Szemple's remaining claims related to allegations occurring prior to May 2017 are dismissed without prejudice as time-barred. Szemple's supervisory claims against Lanigan, Bremer, Briglia and Robinson are dismissed without prejudice.

Szemple's Section 1985 and 1986 claims against Fedei, Connolly and Perera shall proceed. Furthermore, Szemple's remaining federal and state law claims against defendants (1) Nurse John Doe; (2) Sharmalie Perera; (3) Sandra Connolly; and (4) Latifa Fedei arising from the October 15, 2018 incident and subsequent (or lack thereof) medical care arising from the October 15, 2018 incident shall proceed. Szemple's supervisory claims against Perera and Rutgers/UCHC arising from a lack of medical care from the October 15, 2018 incident shall proceed.

Szemple's second motion for the appointment of pro bono counsel will be denied without prejudice.

An appropriate order will be entered.

DATED: March 24 , 2020

PETER G. SHERIDAN
United States District Judge