UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG FRANCIS SZEMPLE, : | |
| : | Civil Action No. 19-12746 (PGS)(DEA) |
| Plaintiff, : | |
| : | |
| v. : | **OPINION** |
| : | |
| RUTGERS UNIVERSITY, et al., : | |
| : | |
| Defendants. : | |

**PETER G. SHERIDAN, U.S.D.J.**

### I.    INTRODUCTION

Plaintiff, Craig Francis Szemple ("Plaintiff"), is a state prisoner currently incarcerated at the Northern State Prison ("NSP") in Newark, New Jersey. He is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Presently pending before this Court is the Defendants Sharmalie Perera ("Perara"), Sandra Connolly ("Connolly"), Latifa Fedai ("Fedai") and Rutgers University, University Correctional Health Care's ("UCHC") motion to dismiss (ECF No. 45) and Plaintiff's response (ECF No. 46) For the following reasons, the motion is denied without prejudice as improperly filed.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his original Complaint in May 2019. (ECF No. 1) Plaintiff raised factual allegations against the following defendants: (1) Rutgers University; (2) UCHC; (3) New Jersey Department of Corrections ("NJ DOC"); (4) NJ DOC Commissioner Gary Lanigan; (5) George Robinson, Administrator Northern State Prison; (6) Dr. Hershem Soliman; (7) Dr. Art Brewer, Assistant Director in charge of health services with the NJ DOC; (8) William Briglia, Supervisor of health services with the NJ DOC; (9) Sharmalie Perera; (10) Sandra Connolly; (11) Michelle

Borowski; (12) Rajiv Shah; (13) Latifa Fedai[1]; (14) Rhoda Kueto, staff member at NSP; (15) Maureen Komaraski, staff member at NSP; (16) Senior Correctional Officer ("SCO") Gonzalez, staff member at NSP; (17) Morton; (18) NJ DOC Central Transport Unit ("NJ DOC CTU"); (19) Pat Nogan; (20) Beverly Hastings; (21) Michele Ricci; (22) John Cunningham; (23) Willie Bonds; (24) Register SCO Saunders; (25) SCO Ramos; (26) SCO Culibette; (27) Geetha Hrishikesan, staff member at NSP; (28) Saint Francis Hospital; (29) NSP; and (30) John and Jane Doe(s) 1-10. (*See id.*) Petitioner's allegations related to two main issues, namely: (1) the transport he received while attending medical appointments outside of prison; and (2) the medical care (or lack thereof) he received while incarcerated. (*See generally id.*)

On March 25, 2020, the Court screened Plaintiff's original complaint for dismissal pursuant to 28 U.S.C. § 1915A. (ECF No. 14.) Upon screening, the Court proceeded Plaintiff's Section 1985 and 1986 claims against Defendants Fedai, Connolly and Perera, Plaintiff's federal and state law claims against Defendants Nurse John Doe, Perera, Connolly, and Fedai arising from an October 15, 2018 incident and the subsequent (or lack thereof) medical care arising from the incident, and Plaintiff's supervisory claims against Perera and Rutgers/UCHC arising from a lack of medical care from the October 15, 2018 incident. (*Id.* at 26.) The Court dismissed Plaintiff's remaining claims. (*Id.* at 25-26.)

Defendant Rutgers University, UCHC filed an answer to Plaintiff's original complaint on January 11, 2021. (ECF No. 28.) March 2, 2021, Plaintiff filed a motion for leave to file an amended complaint. (ECF No. 30.) On March 23, 2021, Defendants Connolly and Perera filed an answer to Plaintiff's original complaint. (ECF No. 33.) On September 1, 2021, Defendant Fedai filed an answer to Plaintiff's original complaint. (ECF No. 40.) Plaintiff's motion for leave to

---

[1] Defendant Latifa Fedai's answer to complaint indicated that her name was originally improperly pled as Latifa Fedei. (ECF No. 40.)

2

amend was granted and his Amended Complaint was accepted for filing on October 4, 2021. (ECF Nos. 41, 42.)

Plaintiff's Amended Complaint again raises claims against the following Defendants: (1) Rutgers University, UCHC; (2) NJ DOC Commissioner Gary Lanigan; (3) Art Brewer; (4) William Briglia; (5) Michele Ricci; (6) Sharmalie Perera; (7) Sandra Connolly; (8) Latifa Fedai; (9) George Robinson; (10) Saint Francis Medical Center; and (11) John/Jane Does. (ECF No. 42 at 2-3.)

According to the Amended Complaint, during the course of his incarceration Plaintiff has been diagnosed with "duodenal ulcers, anemia, prediabetes, ulnar nerve entrapment, arthropathy of the left shoulder, arthritis and joint effusion of the left and right knees, total left knee replacement, degenerative joint disease of the cervical spine, hypertension, hypercholesterolemia, and coronary artery disease requiring open heart surgery in 2001 to perform a quadruple bi-pass." (*Id.* ¶ 14.) Plaintiff also suffers from chronic pain in connection with a degenerative spinal disease. (*Id.* ¶15.) As a result of his impairments, Plaintiff is frequently transported to and from medical facilities for treatment. (*Id.* ¶ 16.)

The Amended Complaint submits that prisoners are transported to and from court and medical appointment by the NJDOC CTU and between 2014-2015, the CTU changed the transport vehicles. (*Id.* ¶ 17.) Plaintiff submits "the cargo section of the vans were nothing more than steal enclosures fitted with two steal bench seats running lengthwise along the inside of both side panels, [with] no cushioning of any kind [] for protections from injury and no seatbelts are provided." (*Id.*) "Prisoners are forced to ride in the vans shackled and handcuffed, with handcuffs additionally attached to waste chains, all of which severely limits the prisoner's ability to move his or her hands and feet to balance, brace and protect themselves during the trips." (*Id.*) Prisoners frequently refuse

3

medical appointments that require transport in the CTU vans, which results in the lack of medical treatment. (*Id.* ¶ 24-25.)

In or around April 2016, Plaintiff was transported to the hospital for an operation to repair an inguinal hernia and during the return trip to the prison the CTU driver drove in such a reckless fashion that "[P]laintiff was hurdled from an unsecured seat in the back of the van, causing the sutures and surgical staples used in the inguinal hernia operation to rip open, necessitating a return trip to the hospital in December 2016 to surgically repair the wound." (*Id.* ¶ 26.) As a result of this incident, Plaintiff was placed on an "exception list" and an accommodation was made that he be transported to medical appointments in the back of an ambulance or wheelchair accessible van. (*Id.* ¶ 27.) Following this accommodation, Plaintiff was transported to medical appointments on six occasions in 2016 where CTU drivers "refused to perform a lookup to determine whether the accommodation had been made, forcing [P]laintiff into the death van over his objection." (*Id.* ¶ 28.)

Plaintiff filed grievances related to Defendants Lanigan, Ricci, Robinson, Brewer, Briglia, Perera, and Connolly's failure to remedy previous complaints about the dangerous conditions of the transport vans, failure to document his injuries and provide medical treatment for said injuries, and the CTU drivers' failure to a follow Plaintiff's accommodation. (*Id.* ¶¶ 30-31.) Plaintiff submits that around September 2017, he was scheduled for a number of medical appointments, and he informed Defendant Connolly that he was supposed to be transported by ambulance or a wheelchair accessible van. (*Id.* ¶ 34.) Defendant Connolly told him the decision had been made "downtown" that Plaintiff would not be transported in an ambulance or wheelchair accessible van. (*Id.*) Plaintiff submits this decision was made by Defendants Perera, Brewer, Briglia, Robinson, Ricci, and Lanigan. (*Id.*) Defendant Connolly also informed Plaintiff that she was directed by her

supervisor, Defendant Perera, to discontinue Plaintiff's pain medication and medical procedures. (*Id.* ¶ 35.) Plaintiff requested copies of his electronic medical records and the accommodation order had been removed. (*Id.* ¶ 36.)

Plaintiff submits the following about an occurrence from October 15, 2018:

> On or about October 15, 2018, Plaintiff was listed for transport to SFMC for a prescribed CAT scan. Plaintiff informed Defendant John Doe 1 about his medical condition and the need for transport in a wheelchair accessible van or ambulance, and then asked John Doe 1 to inquire about the medical transport accommodation that had previously been a part of his EMR, but John Doe 1 responded that he would not make any such inquiry, stating: "We don't make accommodations for prisoners."
>
> As a result of the foregoing, Plaintiff was forced to ride in the Death Van. During the trip, the driver, Defendant John Doe 2, drove well in excess of the posted speed limit and in such a reckless manner as to cause Plaintiff to be violently bounced off the walls of the cargo hold and thrown to the floor, further causing Plaintiff to suffer severe injury and pain to his spine and lower abdomen, resulting in visible black-and-blue bruising over his torso and extremities. John Doe 2 refused to report Plaintiff's injuries during the trip in an effort to cover up his actions with the result that Plaintiff was denied timely medical treatment for injuries, including an umbilical hernia and bilateral hydroceles.
>
> SFMC staff were aware that Plaintiff suffered severe injuries during his transport on October 15, 2018, and that such injuries would require medical treatment, yet SFMC staff working in the hospital's prison unit, and particularly Jane Doe 1 and John Doe 3, refused to document the injuries that Plaintiff suffered during transport, with the direct result of concealing Plaintiff's injuries during transport and, thereby, frustrating emergency medical treatment of Plaintiff's injuries and pain, including an umbilical hernia and bilateral hydroceles that surgeons at SFMC diagnosed as needing surgery.
>
> When Plaintiff was returned to the prison, he was given a routine physical examination as is customary following medical trips outside of the prison. The examining nurse, Defendant Jane Doe 2, recorded in the EMR that Plaintiff had visible bruising on his torso and extremities that were not present when Plaintiff left the prison to be treated at SFMC; however, another nurse, Defendant Nurse Register, urged Jane Doe 2 to change the EMR injury report, which

5

> Jane Doe 2 did, thereby deleting any reference to Plaintiff's injury on the trip or the visible bruising on Plaintiff's body.
>
> As a direct result of the omissions by SFMC staff, and the alteration of the EMR injury report following the October 15, 2018, trip to SFMC, Plaintiff was denied needed medical treatment for his injuries and for pain, including needed surgery for an umbilical hernia and bilateral hydroceles.
>
> When Plaintiff confronted Dr. Connolly and Dr. Perera the next day about the injuries and the alteration of the EMR injury report, Dr. Connolly and Dr. Perera ignored the claim. Although Dr. Connolly and Dr. Perera both examined Plaintiff physically, observed the bruising, and caused Plaintiff to recoil in pain when touching the bruised areas on his body, they refused to report those findings in Plaintiffs EMR and refused to provide any medical treatment. Instead, the reply that Plaintiff received from Connolly was: "Pain is good for you, deal with it." Dr. Perera, who overheard the conversation, took no action to correct Connelly's remarks.
>
> When Plaintiff complained to APN Latia Fed[a]i about the increased level of untreated pain that he was experiencing, Fed[a]i ignored Plaintiff's complaint and refused to conduct any medical evaluation. Instead, Fed[a]i, a person of Arab descent, made the following responsive remarks: "You Americans are weak, especially you Jews. In the Middle East, we don't take pain meds and we built the pyramids without doctors or nurses to care for us. America is a weak country and the Jews are the worst of the lot."
>
> Plaintiff, an observant Jew, after having been deprived a medical evaluation for being a "Jew," upon hearing these anti-Semitic ravings, and not wanting to be further berated for his religion, got up and walked out of Fed[a]i's office. Connolly and Perera were present when Fed[ai] bera[a]ted Plaintiff for being Jewish but failed to intervene and even encouraged Fed[a]i to do so.
>
> As a consequence of the foregoing, and as a direct result of the concealed injuries that Plaintiff suffered while being transported in the Death Van, Plaintiff was refused medical evaluation for his injuries and pain.

(*Id.* ¶¶ 38-45.)

Plaintiff indicates that he is bringing the following causes of action: (1) 42 U.S.C. § 1983 Eighth and Fourteenth Amendment; (2) 42 U.S.C. § 1985 conspiracy; (3) 42 U.S.C. § 1986

Conspiracy; (4) 42 U.S.C. § 12101 Americans with Disabilities Act; (5) Section 504 of the Rehabilitation Act of 1973; (6) medical malpractice; (7) negligence; (8) intentional infliction of emotional distress; and (9) fraud.

On January 28, 2022, Defendants Connolly, Fedai, Perera, and Rutgers University filed a motion to dismiss. (ECF No. 45.) Defendants seek dismissal of Plaintiff's Amended Complaint based on his failure to file an affidavit of merit. (*See id.*) Plaintiff filed a reply in opposition to Defendants' motion. (ECF No. 46.)

## III.   LEGAL STANDARDS

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based on those documents, and matters of public record. *In re Bayside Prison Litig.*, 190 F.Supp.2d 755, 760 (D.N.J. 2002). The Defendants motion seeking dismissal of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) ignore the Third Circuit's precedential decision in *Nuveen Municipal Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 303 (3d Cir. 2012). The Third Circuit expressly held that that "the affidavit of merit is not a pleading requirement" in federal court (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 160, 3d Cir. 2000), and instructed that such motions for dismissal are properly brought under Fed. R. Civ. P. 56 as motions for summary judgment.[2] *Nuveen Municipal Trust*, 692 F.3d at 303 n.13 ("That the affidavit [of merit] is not a pleading requirement counsels that a defendant seeking to

---

[2] The affidavit of merit statute states that failure to provide an affidavit of merit "shall be deemed a failure to state a cause of action," N.J.S.A. 2A:53A-29, but the timeline for filing an affidavit of merit is triggered by defendant's filing of an answer. Though state courts construe the failure to file an affidavit as the failure to state a claim at the pleading stage, *see Ferreira v. Rancocas Orthopedic Associates*, 178 N.J. 144, 150 (2003) ("the plaintiff's failure to serve an affidavit within 120 days of the filing of the answer is considered tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice."), the Third Circuit does not consider the affidavit of merit a pleading requirement or cause for dismissal under Rule 12(b)(6) because the affidavit of merit requirement is triggered only after the answer is filed.

7

'dismiss' an action based on the plaintiff's failure to file a timely affidavit should file a motion for summary judgment under Rule 56, and not a motion to dismiss for failure to state a claim under Rule 12(b)(6).").

Because Defendants' motion to dismiss on affidavit of merits grounds must be filed as a motion for summary judgment, the Court finds that the motion to dismiss is improperly filed. As such, the Court will deny the motion to dismiss without prejudice.

## IV.  CONCLUSION

For the reasons expressed above, the Court will deny Defendants' motion to dismiss. (ECF No. 45.) An appropriate order follows.

s/*Peter G. Sheridan*  
PETER G. SHERIDAN, U.S.D.J.

DATED: September 6, 2022